Jimmy Ray ROSS, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–87–01274–CR.

Court of Appeals of Texas,
Dallas.

Dec. 28, 1988.
Rehearing Denied Jan. 31, 1989.

Douglas D. Mulder and John D. Nation, Dallas, for appellant.

Anne B. Wetherholt, Dallas, for appellee.

Before DEVANY, McCLUNG and LAGARDE, JJ.

LAGARDE, Justice.

Ross appeals his conviction by a jury for voluntary manslaughter. The jury assessed punishment at confinement for fifteen years and one day. In eight points of error, Ross asserts that the trial court erred: (1) in failing to submit a specially requested instruction on involuntary conduct; (2) in submitting its own incorrect instruction on involuntary conduct; (3) in failing to apply the law of self-defense to

the facts of the lesser-included offense of voluntary manslaughter; (4) through (6) in admitting into evidence the pistol used in the commission of the offense since it was the fruit of an illegal search because the search was a warrantless search conducted, without consent, by officers who lacked authority or exigent circumstances to enter and search Ross's residence; (7) in admitting character evidence in the form of reputation testimony by Officer Mary Shepard and (8) in admitting character evidence in the form of reputation testimony by Officer James Pool. We conclude that all points are without merit; consequently, we affirm.

The facts in this case show that Ross and his date drove to the El Dorado Club in the early morning hours of February 1, 1987. Ross dropped his date off, parked his car, and talked to some friends outside. Ross then learned that the deceased had been bothering his date. When Ross became aware of this fact, he engaged the deceased in conversation. The conversation became heated and the deceased started to rise from his bar stool. Although the testimony conflicts as to whether the deceased reached into his jacket at this point to get a weapon, it is clear that as the deceased started to rise, Ross began to beat him with a pistol.

During the beating, Ross's pistol discharged at least twice. One shot penetrated the deceased's right shoulder area and subsequently caused his death. Following the shooting, Ross left the bar. The police were called, and they conducted an investigation during which they obtained the names of several witnesses but recovered no weapon from the scene.

On February 5, 1987, Dallas police investigator John Westphalen attempted to serve Ross with a felony arrest warrant for the murder. When Westphalen arrived at Ross's residence, Ross produced papers showing that he had turned himself in to the sheriff for the offense and had been released on bond.

On February 11, 1987, Westphalen and Investigator John Coughlin attempted to execute a felony arrest warrant on Ross for unlawfully carrying a weapon in the El Dorado Club. They proceeded to Ross's residence and knocked on the door. When no one answered, Westphalen and Coughlin contacted Dallas Security Force officers who let them into the residence with a pass key. During a warrantless search of the apartment, Coughlin found a pistol on a shelf in the bedroom closet; he seized the pistol. After it was identified by an expert witness as the murder weapon, the pistol was admitted into evidence during the trial. With these facts in mind, we address Ross's eight points of error.

### Involuntary Conduct

In his first two points of error, Ross asserts that the trial court erred in refusing to submit his specially requested instruction on involuntary conduct and in submitting the court's own incorrect instruction on that issue. For two reasons, we disagree; consequently, we overrule points of error one and two.

First, there is no substantive difference between the charge given and the charge requested. Ross's requested instruction on involuntary conduct reads:

You are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act. Conduct is not rendered involuntary simply because the person did not intend the result of his conduct. Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Jimmy Ray Ross, Jr., did cause the death of Raymond Johnson by shooting him with a firearm as alleged in the indictment, but you further believe from the evidence, or you have a reasonable doubt thereof, that the *shooting* of the firearm was not the voluntary act or conduct of the defendant, you will acquit the Defendant and say by your verdict "not guilty."

(Emphasis added.) The instruction given by the trial court reads:

You are instructed that as a part of the law that before there can be a conviction

for any offense set forth in the court's charge, it must be shown by the evidence beyond a reasonable doubt that the defendant voluntarily engaged in conduct, including an act. Conduct is not rendered involuntary simply because the person did not intend the result of his conduct.

You are therefore instructed that if you find that the deceased was killed as a result of a gunshot but you further believe that the *discharge* of the gun was not as a result of voluntary conduct by the defendant, Jimmy Ray Ross, Jr. or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "not guilty."

(Emphasis added.) As stated by Ross, the only possible substantive difference in the two instructions is that the word "discharge" has been substituted for the word "shooting."

■ Ross claims that this one difference significantly alters the instruction and renders the court's denial of the requested instruction harmful error. We disagree. When a refused charge is substantially the same as or is adequately covered by the charge given, there is no harm in failure to give the refused charge. *Hawkins v. State*, 660 S.W.2d 65, 81–82 (Tex.Crim.App. 1983). Thus, the court did not err in refusing the requested instruction or in submitting its own.

Second, the evidence did not raise the issue of involuntary conduct; therefore, the trial court was not required to include the instruction in its charge to the jury. *See George v. State*, 681 S.W.2d 43, 47 (Tex.Crim.App.1984); *Williams v. State*, 630 S.W.2d 640, 644 (Tex.Crim.App.1982); *Gaona v. State*, 733 S.W.2d 611, 617 (Tex.

App.—Corpus Christi 1987, pet. ref'd); *Pimental v. State*, 710 S.W.2d 764, 773 (Tex. App.—San Antonio 1986, pet. ref'd).

In making this determination, it is helpful for us to place involuntary conduct instructions into historical perspective. Generally, involuntary conduct instructions have subsumed accident instructions. *See Dockery v. State*, 542 S.W.2d 644, 649–50 (Tex.Crim.App.1976). The 1974 Texas Penal Code does not contain an express defense of accident; however, the Court of Criminal Appeals has held that section 6.01(a) of the Code performs, at least in part, the same function as the former defense of accident. *See Williams*, 630 S.W.2d at 644; *Dockery*, 542 S.W.2d at 649–50; *Pimental*, 710 S.W.2d at 773. Section 6.01(a) provides: "A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession." TEX.PENAL CODE ANN. § 6.01(a) (Vernon Supp.1988).

■ Thus, if the issue of involuntary conduct is raised by the evidence, a jury may be charged that a defendant should be acquitted if there is a reasonable doubt as to whether he voluntarily engaged in the conduct for which he is accused.[1] *Williams*, 630 S.W.2d at 644; *Pimental*, 710 S.W.2d at 773. Furthermore, the testimony of the defendant alone may raise the issue and entitle the defendant to an instruction. *See Pimental*, 710 S.W.2d at 773.

■ With these general legal principles in mind, we now focus on the specific facts before us. The facts in *George v. State*, 681 S.W.2d at 44, are extremely close to the instant case.[2] In *George*, the thirteen-year-old victim was visiting the younger

---

1. However, this rule has been questioned. The court in *George* stated that involuntary conduct may not be a defense; instead, voluntary conduct appears to be an element the State must prove. *George*, 681 S.W.2d at 46 n. 6. *See also Joiner v. State*, 727 S.W.2d 534, 536 n. 3 (Tex. Crim.App.1987). Generally, no defensive instruction is required where the defensive theory is merely denying an element the State must prove. *See Moore v. State*, 736 S.W.2d 682, 684

(Tex.Crim.App.1987). While we note this fact, we limit our review to whether the evidence raised the issue of involuntary conduct.

2. In *George*, the appellant was convicted of an offense that only required a culpable mental state of recklessness. The instant cause, involving a conviction for voluntary manslaughter, requires a culpable mental state of intentionally or knowingly. TEX.PENAL CODE ANN.

brothers of the appellant. *George*, 681 S.W.2d at 44. George demanded that the victim give him a dollar, but the victim refused. George then pointed a .22 caliber revolver at the victim and thumbed the hammer partially back. George testified at trial that his thumb unintentionally slipped off the hammer and the gun discharged. With these facts before it, the Court of Criminal Appeals held that the trial court did not err in refusing to give the requested involuntary conduct instruction since the evidence did not raise that issue. *See Id.* at 47.

■ The Court acknowledged the fact that a person could commit an offense only if he voluntarily engaged in conduct. *See George*, 681 S.W.2d at 45; *see also Joiner*, 727 S.W.2d at 535; *Gaona*, 733 S.W.2d at 615. However, the Court went on to define just what "voluntarily engaging in conduct" meant. *See George*, 681 S.W.2d at 45. Under the Court's definition, "conduct" could include one or more separate acts, so for *"voluntary conduct"* to occur, the Court held that a person only had to engage in a single voluntary act and its required mental state. *See Id.* Therefore, conduct is not rendered involuntary simply because it may also include an involuntary act or because the accused did not intend the result of his conduct. *See Joiner*, 727 S.W.2d at 536–37; *George*, 681 S.W.2d at 45; *Gaona*, 733 S.W.2d at 616.

■ In the final analysis, a trial court is not required to charge on involuntary conduct if the defendant engaged in a single voluntary act and its required mental state—even though an involuntary act may also constitute part of the overall conduct. *See Joiner*, 727 S.W.2d at 536–37; *George*, 681 S.W.2d at 47; *Gaona*, 733 S.W.2d at 617. That is just the situation before us here. Ross voluntarily carried a loaded pistol into a bar and confronted the de-

ceased. He voluntarily beat the victim with the weapon, during which time the pistol discharged twice, striking the deceased. Up to the very second that the pistol discharged for the second time, Ross engaged in voluntary conduct with the required culpable mental state of intentionally or knowingly. The mere fact that Ross testified that he did not intend for the gun to discharge did not render the conduct involuntary so as to require an involuntary conduct charge. *See George*, 681 S.W.2d at 47; *Gaona*, 733 S.W.2d at 617; *Pimental*, 710 S.W.2d at 773. Based on the above, we hold that the evidence did not raise the issue of involuntary conduct; therefore, the trial court did not err in refusing to submit Ross's requested instruction to the jury. We overrule Ross's first two points of error.

### *Self–Defense*

In his third point of error, Ross complains that the trial court erred in failing to apply the law of self-defense to the facts of the lesser-included offense of voluntary manslaughter. Specifically, Ross urges that the trial court's failure to apply the law to the facts made the charge defective for two reasons. First, it may have given the jury the misleading impression that this defense did not apply to any lesser-included offenses. Second, failure to apply the law to the facts of the lesser-included offense left the jury with no guidance as to how to apply the defense to the evidence.

The record shows that the trial court's charge first informed the jury of the specifics of the murder offense with which Ross was charged. Thereafter, the trial court defined certain legal terms for the jury, immediately following which it applied the abstract law to the facts of murder. Thereafter the court charged on the lesser-included offenses of voluntary manslaughter, aggravated assault, involuntary man-

§ 19.04 (Vernon 1974); TEX.PENAL CODE ANN. § 19.02(a)(1) (Vernon 1974). Ross urges that this difference distinguishes that case from the case before us. We do not agree. The degree of the culpable mental state of the of-

fense does not affect the issue of whether the evidence presented in the case entitles a defendant to an instruction on involuntary conduct. *See Joiner*, 727 S.W.2d at 536; *George*, 681 S.W.2d at 47.

slaughter, and finally on criminally negligent homicide. After having charged on all five offenses, the trial court then instructed the jury in the abstract on self-defense but did not specifically and individually apply that law to each separate lesser-included offense.

Ross asserts that the trial court's failure to apply the law of self-defense to the lesser-included offense of voluntary manslaughter is reversible error. Ross relies on *Doyle v. State*, 631 S.W.2d 732, 735–37 (Tex.Crim.App.1980) for the general rule that the trial court is required to apply abstract propositions of law to the facts of the case. We do not disagree with this general assertion. However, Ross then relies on *Didion v. State*, 625 S.W.2d 436, 438 (Tex.App.—Houston [14th Dist.] 1981, pet. ref'd), as authority for his position that the trial court's failure to separately apply the abstract law of self-defense to the specific facts of voluntary manslaughter, for which Ross was convicted, constitutes harmful error. While Ross correctly points out that the case at bar differs from *Didion* in that here there is an objection and in *Didion* there was no objection, it is more helpful to put the language of *Didion*, upon which Ross relies, into context. The court in *Didion* stated:

> ... the jury here was specifically instructed on self-defense to the offense in the indictment: attempted murder. The jury was not left with mere abstract propositions of law or general statements of principles to apply to the case. The jury was given direction on how to apply self-defense to attempted murder, the offense out of which the lesser included offense of aggravated assault arose. While the omission of the additional charge by the court may amount to error, it was not fundamental.

*Didion*, 625 S.W.2d at 438.

We do not agree that the abstract instruction given here in any way misled the jury. The charge, in pertinent part, stated: "It is a defense to this prosecution if the defendant's conduct was justified by law. *This applies to any alleged offense set forth in the court's charge.*" (emphasis added). The jury, therefore, could not possibly have been misled. The instruction was not limited to any particular offense but was given as a general principle of law. *Lee v. State*, 671 S.W.2d 630, 634 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd); *see Thomas v. State*, 599 S.W.2d 812, 813–14 (Tex.Crim.App.1980). The trial court then applied the abstract law of self-defense to the facts of the case:

> Therefore, even if you believe from the evidence beyond a reasonable doubt that the defendant caused the death of Raymond Johnson by shooting him with a handgun, as alleged, but you further believe from the evidence or you have a reasonable doubt thereof, that at the time he did so, the defendant reasonably believed from the words or conduct, or both, of the said Raymond Johnson that Raymond Johnson was using or attempting to use unlawful deadly force against him, and that he reasonably believed, as viewed from his standpoint alone, that the use of force and the degree of force used were immediately necessary to protect himself against Raymond Johnson's use or attempted use of deadly force, and that a reasonable person in the defendant's situation would not have retreated, you will find the defendant not guilty; or if you have a reasonable doubt as to whether or not the defendant was acting in self defense, as defined herein, on said occasion, then you should give the benefit of the doubt to the defendant and acquit him and say by your verdict "not guilty".
>
> You are instructed, in connection with the right of self defense, that if the defendant was acting in self defense when he shot at the deceased, if he did, then he would have a right to continue shooting his handgun, if he did, at deceased so long as it reasonably appeared to him, at the time, as viewed from his standpoint alone, that all danger had not passed.
>
> However, if you believe from the evidence beyond a reasonable doubt that at

the time and place in question, the defendant did not reasonably believe that Raymond Johnson was using or attempting to use unlawful deadly force against him, or that the defendant did not reasonably believe that the use of force and the degree of force used were immediately necessary to protect himself against Raymond Johnson's use or attempted use of deadly force, or that a reasonable person in the defendant's situation would have retreated, you will find against the defendant on this plea of justification.

Based on the above application of law to the facts, we conclude that here, as in *Didion*, the "jury was not left with mere abstract propositions of law or general statements of principles to apply to the case." *Didion*, 625 S.W.2d at 438. We further conclude that the law of self-defense, as applied, adequately protected Ross's interest and, therefore, the trial court's failure to separately apply the law of self-defense to voluntary manslaughter was not error.

■■■ Assuming for the sake of argument, however, that the failure to specifically apply the abstract law of self-defense to voluntary manslaughter was error, we conclude that it was harmless error under the test set out in *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986) and *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985). Under that test, the presence of *any* harm, regardless of degree, which results from preserved charging error, as here, is sufficient to require a reversal of the conviction. *Arline*, 721 S.W.2d at 351 (emphasis in original). However, the harm must be actual, not theoretical harm. *Arline*, 721 S.W.2d at 351; *Almanza*, 686 S.W.2d at 174. We conclude that Ross suffered no actual harm.

In conclusion, we hold that the trial court's application of the abstract law of self-defense to the facts of the case at bar, as specifically stated in the court's charge, adequately informed the jury of its duty to apply the law of self-defense to the offense of voluntary manslaughter. We further

conclude that its failure to specifically repeat the application of the law of self-defense to the lesser-included offense of voluntary manslaughter was not error. Alternatively, we conclude that should it be deemed error, it is harmless error; and we so hold. Further, the self-defense charge was applied to the facts at the conclusion of the application of the general law to all five offenses; namely, murder, the offense for which Ross was indicted, as well as the lesser-included offenses of voluntary manslaughter, aggravated assault, involuntary manslaughter, and criminally negligent homicide. Read in context, we conclude that the jury was not misled by the trial court's failure to repeat the self-defense charge with specific reference to voluntary manslaughter. Consequently, we overrule Ross's third point of error.

### Harmless Error

■■ In points of error four, five and six, Ross complains that the trial court erred in admitting a pistol into evidence that was allegedly the fruit of an illegal search and seizure. Assuming, without deciding, that the trial court erred in admitting the pistol, we hold that the error was harmless beyond a reasonable doubt. TEX.R.APP.P. 81(b)(2).

■■ Inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove. *Anderson v. State*, 717 S.W.2d 622, 628 (Tex.Crim.App.1986). Moreover, this inadmissible evidence can also be rendered harmless if the defendant himself testified in agreement with the evidence or if other evidence of the defendant's guilt is overwhelming. *See Id.*

Applying these rules to the case *sub judice*, we note that several witnesses testified, without objection, that Ross beat the victim with a loaded pistol during which time the pistol discharged striking the deceased. Several of the witnesses testified that the pistol was big and silver colored.

In fact, even the defendant testified during the guilt-innocence phase of the trial that he beat the deceased with a pistol and that the pistol went off. The defendant's own testimony, together with other overwhelming eyewitness testimony, lead us to conclude beyond a reasonable doubt that the error, if any, made no contribution to the conviction. Likewise, evidence of Ross's bad reputation, three prior convictions involving guns, and a sentence substantially less than the maximum leads us to conclude, beyond a reasonable doubt, that the error, if any, made no contribution to the punishment. Thus, we overrule Ross's fourth, fifth and sixth points of error.

In points of error seven and eight, Ross claims that the trial court erred in admitting the reputation testimony of James Pool and Mary Shepard since they were not substantially familiar with the reputation of the accused prior to the date of the offense.

Rule 405(a) of the Texas Rules of Criminal Evidence states:

> In all cases in which evidence of character or trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. *Provided however that in order to be competent to testify concerning the character or trait of character of the accused, a witness must, prior to the date of the offense, have been substantially familiar with the reputation of the accused.* In all cases where testimony is admitted under this rule, on cross-examination inquiry is allowable into relevant specific instances of conduct.

TEX.R.CRIM.EVID. 405(a) (emphasis added).

■ Generally, all questions affecting the admissibility of evidence belong to the province of the trial judge. *Sherman v. State*, 428 S.W.2d 338, 342 (Tex.Crim. App.1968). It follows that when the admissibility of a given piece of evidence depends upon some preliminary question of fact, the existence or non-existence of that fact is to be determined by the trial court. *Id.* Furthermore, a trial judge's ruling that evidence is admissible will be sustained if there is any basis to support it. *Nickerson v. State*, 645 S.W.2d 888, 890 (Tex.App.—Dallas 1983), *aff'd*, 660 S.W.2d 825 (Tex. Crim.App.1983).

■ On October 26, 1987, James Pool testified on cross-examination that he had "known" Ross for five to six months. That would indicate that Pool did not know Ross on February 1, 1987, the date of the offense. However, Pool clarified his testimony on redirect by stating that he began hearing things about Ross beginning in January of 1987. As a result, the trial court had a basis to believe that Pool was substantially familiar with Ross's reputation prior to the date of the offense; therefore, the trial court did not err in admitting Pool's testimony. *See Id.*

■ Mary Shepard, on the other hand, testified on October 26, 1987, that she had known Ross for a little more than six months. Shepard made no subsequent clarifying statements. Consequently, the trial court erred in admitting her testimony since there was no basis for a finding that she was substantially familiar with Ross's reputation prior to February 1, 1987, the date of the offense. *See Id.*

■ Although the trial court erred in admitting Mary Shepard's testimony, we conclude that the testimony was harmless beyond a reasonable doubt. TEX.R.APP.P. 81(b)(2). Generally, if there is a reasonable possibility that the evidence might have contributed to the conviction or to the punishment, the inadmissible evidence is harmful. *See Anderson*, 717 S.W.2d at 628.

However, inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact or facts that the inadmissible evidence sought to prove. *Id.* Investigator John Coughlin's testimony that Ross had a bad reputation for being peaceful and law-abiding was admitted at trial with-

out objection. That testimony proved the same facts about Ross's bad reputation as Mary Shepard's testimony. Furthermore, three other officers also testified about Ross's bad reputation as a peaceful and law-abiding citizen.

Additionally, inadmissible evidence can also be rendered harmless if other evidence of the defendant's guilt is overwhelming. *See id.* In this instance, overwhelming eyewitness testimony, other evidence of Ross's bad reputation, three prior convictions involving guns, and a sentence substantially less than the maximum lead us to conclude that no harm resulted from the admission of Shepard's testimony into evidence. Based on the above, we hold that the trial court erred in admitting Mary Shepard's testimony but further hold that the error was harmless beyond a reasonable doubt. TEX.R.APP.P. 81(b)(2). Therefore, we overrule Ross's seventh and eighth points of error and affirm the trial court's judgment.