

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00217-CR

Juan **HERNANDEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR11271
Honorable Lorina I. Rummel, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:    Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: April 10, 2019

AFFIRMED

Juan Hernandez was convicted by a jury of murder and aggravated assault with a deadly weapon. On appeal, Hernandez contends the evidence is legally insufficient to establish he acted voluntarily when he shot and killed Victor Gonzales. Hernandez further contends the evidence is legally insufficient to support the jury's implicit rejection of his defensive theories of self-defense, defense of a third person, and necessity in the shooting of Jesus Gonzales. We affirm the trial court's judgments.

## BACKGROUND

Hernandez and the two victims, Victor and Jesus, are cousins, and Gloria Martinez is their aunt. Victor and Jesus were at Gloria's house following an altercation involving Victor, Jesus, and Hernandez's brothers Sonny and Jose. Gloria, Robert Lopez, and Andrea Vallejo were also present at Gloria's house. Victor, Jesus, Gloria, Lopez, and Vallejo were outside in front of Gloria's house talking when Hernandez arrived with Sonny and Hernandez's brother-in-law Jesse Martinez.

Upon arriving at Gloria's house, Hernandez exited the car and approached Victor, and the two men appeared to be preparing to fight. After Jesus pulled out a knife, Hernandez returned to the car and retrieved a shotgun. Victor, Robert, and Andrea ran to the back of the house while Jesus ran inside the house through the open front door. Hernandez followed Jesus inside the house and shot him. Hernandez then exited the house where he encountered Victor holding a brick. The evidence is conflicting regarding the men's actions; however, the encounter ended with Hernandez shooting and killing Victor. Hernandez, Sonny, and Martinez then fled the scene.

Sometime later, Hernandez, Sonny, Jose, and their sister went to a police station to provide information regarding the events. Hernandez was arrested and charged with murder and aggravated assault with a deadly weapon. After hearing all of the evidence, the jury found Hernandez guilty of both offenses. Hernandez appeals.

## LEGAL SUFFICIENCY STANDARD OF REVIEW

When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard requires us to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts." *Id*. The jury is the sole judge of the credibility of the witnesses, and we presume the jury resolved any conflicts in the evidence in favor of the verdict. *Zuniga v. State*, 551 S.W.3d 728, 733 (Tex. Crim. App. 2018). As the sole judge of the credibility of witnesses, the jury is free to believe all, some, or none of a witness's testimony. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *Monreal v. State*, 546 S.W.3d 718, 724 (Tex. App.—San Antonio 2018, pet. ref'd). "We may not re-weigh the evidence or substitute our judgment for that of the factfinder." *Zuniga*, 551 S.W.3d at 732.

### VOLUNTARY ACT

In his first issue, Hernandez asserts the evidence is legally insufficient to establish he acted voluntarily when he shot and killed Victor.

"A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession." TEX. PENAL CODE ANN. § 6.01(a). Voluntariness as used in section 6.01(a) "focuses solely on physical acts of the accused." *Farmer v. State*, 411 S.W.3d 901, 905 (Tex. Crim. App. 2013). "'The operative word under Section 6.01(a), for present purposes, is *include*.'" *Id*. at 906 (emphasis added) (quoting *Rogers v. State*, 105 S.W.3d 630, 638 (Tex. Crim. App. 2003)). "'[T]the "voluntary act" requirement does not necessarily go to the ultimate act (e.g., pulling the trigger), but only that criminal responsibility for the harm must "include an act" that is voluntary (e.g., pulling the gun, pointing the gun, or cocking the hammer).'" *Id*. (quoting *Rogers*, 105 S.W.3d at 638). "Thus, a voluntary act that comprised a portion of the commission of the offense is sufficient to satisfy the requirement of Section 6.01(a), even if that voluntary act was accidental or the consequences of that act were unintended." *Id*. at 906; *cf. Ross v. State*, 763 S.W.2d 897, 901 (Tex. App.—Dallas 1988, pet. ref'd) ("In the final analysis, a trial court is not required to charge on involuntary conduct if the defendant engaged in a single voluntary act and its required mental state—even though an involuntary act may also constitute part of the overall

conduct."). For example, the fact that a defendant did not intend to struggle with a victim over a gun "does not render his conduct in doing so involuntary or any of his bodily movements during that encounter involuntary." *Adanandus v. State*, 866 S.W.2d 210, 230 (Tex. Crim. App. 1993). And, even if a defendant did not intend to pull the trigger, a gun does not fire "on its own volition." *Id*.

Hernandez contends his actions were not voluntary because Victor's shooting was "the accidental result of a tug-of-war over the barrel of the shotgun." Hernandez further contends he was in a "stunned condition" after Victor hit him in the head with a brick, and "[t]he gun went off accidentally during the [subsequent] struggle" over the shotgun. In support of his arguments, Hernandez relies on his own testimony; however, that reliance is misplaced. First, the jury could have disbelieved him. In addition, his own testimony established he engaged in the voluntary acts of retrieving the shotgun and pointing it at Victor. And, even if Hernandez did not intend to pull the trigger, the gun did not fire "on its own volition." *Id*. Therefore, even if the jury believed that the gun discharged during a struggle between Hernandez and Victor, Hernandez still engaged in voluntary acts that comprised a portion of the offense. Thus, the evidence is legally sufficient to establish Hernandez voluntarily engaged in acts "that comprised a portion of the commission of the offense [which] is sufficient to satisfy the requirement of Section 6.01(a)." *Farmer*, 411 S.W.3d at 906.

### SELF-DEFENSE/DEFENSE OF A THIRD PERSON

In his second and third issues, Hernandez contends the evidence is legally insufficient to support the jury's implicit rejection of his claim that he acted in self-defense or in defense of a third person when he shot Jesus. Hernandez contends the evidence established he grabbed the shotgun because Jesus had a knife, and he believed Jesus tried to stab him. Hernandez further contends he did not drive away when he returned to the car to retrieve the shotgun because he was

concerned Victor or Jesus would retrieve an assault rifle from the house which could be used to shoot him, Sonny, and Martinez. Finally, he contends the evidence established he shot Jesus when Jesus kept coming at him with knives.

A. Applicable Law

"A person is justified in using deadly force against another: (1) if the actor would be justified in using force against the other under Section 9.31; and (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary: (A) to protect the actor against the other's use or attempted use of unlawful deadly force." TEX. PENAL CODE ANN. § 9.32(a). Under Section 9.31, "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* at § 9.31(a).

A person is justified in using deadly force against another to protect a third person if: (1) he would have been justified in using deadly force to protect himself against the unlawful deadly force "he reasonably believes to be threatening the third person he seeks to protect;" and (2) he "reasonably believes his intervention is immediately necessary to protect the third person." *Id.* at § 9.33. "A person defending on the grounds of defense of a third person stands in the shoes of the third person." *Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Hughes v. State*, 719 S.W.2d 560, 564 (Tex. Crim. App. 1986)). "Thus, the use of [deadly] force to protect a third person is justified in any situation in which the third person would be justified in using [deadly] force to protect himself." *Id.*

In considering the justifications of self-defense and defense of a third person, the jury is not required to find that a victim was actually using or attempting to use unlawful deadly force against a defendant. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). "A person has the right to defend himself from apparent danger to the same extent as he would if the danger were

real." *Id*. The only requirement is that a defendant reasonably believe he must act immediately. *See id*.

B. Standard of Review: Implicit Rejection of Self-Defense or Defense of a Third Person

Once a defendant produces some evidence raising the issue of self-defense or defense of a third person, the State bears the burden of persuasion to show beyond a reasonable doubt that the defendant's actions were not justified. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991); *Valverde v. State*, 490 S.W.3d 526, 527–28 (Tex. App.—San Antonio 2016, pet. ref'd); *Smith*, 355 S.W.3d at 144. To meet its burden of persuasion, the State is not required to produce additional evidence. *Saxton*, 804 S.W.2d at 913; *Valverde*, 490 S.W.3d at 528; *Smith*, 355 S.W.3d at 144. If the jury finds the defendant guilty, it has made an implicit finding against any defensive theory raised by the defendant. *Saxton*, 804 S.W.2d at 914; *Valverde*, 490 S.W.3d at 528; *Smith*, 355 S.W.3d at 144.

When a defendant challenges the legal sufficiency of the evidence to support the jury's implicit rejection of his self-defense or defense of a third party claim, "'we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt.'" *Valverde*, 490 S.W.3d at 528 (quoting *Saxton*, 804 S.W.2d at 914). In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *Valverde*, 490 S.W.3d at 528.

C. Discussion

In order for the jury to find Hernandez was justified in using deadly force, the jury had to find Hernandez had a "reasonable belief" that deadly force was immediately necessary to protect himself, Sonny, or Martinez against Jesus's use or attempted use of unlawful deadly force. A "reasonable belief" is "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." TEX. PENAL CODE ANN. § 1.07(a)(42).

In his brief, Hernandez focuses extensively on his own testimony regarding Jesus threatening him with a knife and continuing to threaten him when Hernandez followed him inside the house. Hernandez's testimony, however, was inconsistent with the testimony of the other witnesses. First, the other witnesses testified Jesus kept the knife at his side and never threatened Hernandez or anyone else with the knife. In addition, Jesus testified he dropped the knife on his way inside the house and was not in possession of the knife when Hernandez shot him. Furthermore, the jury could have disbelieved Hernandez's testimony regarding his fear that Victor or Jesus would retrieve an assault rifle. No other testimony or evidence established an assault rifle was even in the house, and the jury could have believed Hernandez's use of a gun to shoot Jesus was not immediately necessary because he could simply have driven away from the scene rather than following Jesus inside the house. Several witnesses testified Jesus did not pursue Hernandez when he walked back to the car to retrieve the shotgun. Finally, Hernandez fled the scene after the shooting. *See Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007) (noting a "factfinder may draw an inference of guilt from the circumstance of flight"); *Valverde*, 490 S.W.3d at 529 (noting jury was entitled to consider defendant's actions in leaving the scene in evaluating self-defense claim).

Having reviewed all of the evidence in the light most favorable to the jury, we hold the evidence supported the jury's implicit rejection of Hernandez's claims of self-defense and defense of a third person. Hernandez's second and third issues are overruled.

## NECESSITY

In his final issue, Hernandez contends the evidence is legally insufficient to support the jury's implicit rejection of his assertion of the defense of necessity with regard to Jesus's shooting. Hernandez relies on the same evidence in support of his defense of necessity as he relies on in support of his self-defense and defense of a third person arguments. First, he contends the evidence established he did not leave after retrieving the shotgun because he believed Victor and/or Jesus "would assassinate him using an automatic weapon before he could drive out of the range of such a weapon." Next, he contends the evidence showed his approaching the house "was necessary to assure that [Jesus] would not get an assault weapon and blow him away." Finally, he contends the evidence established that he shot Jesus because Jesus was "brandishing an apparent knife at him" and he "reasonably feared that [Jesus] would stab him to death."

In order to prove the defense of necessity, the evidence must establish that the defendant reasonably believed his conduct was "immediately necessary to avoid imminent harm." TEX. PENAL CODE ANN. § 9.22. "'Reasonable belief' means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant." *Stefanoff v. State*, 78 S.W.3d 496, 501 (Tex. App.—Austin 2002, pet. ref'd). "'Imminent' has been defined as ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Henley v. State*, 493 S.W.3d 77, 89 (Tex. Crim. App. 2016) (internal quotation omitted). "Thus, imminent harm is harm that is ready to take place—harm that is coming in the very near future." *Id*. Stated differently, "[h]arm is imminent when there is an emergency situation and it is 'immediately necessary' to avoid that harm." *Pennington v. State*, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth

2001, pet. ref'd). "In other words, a split-second decision is required without time to consider the law." *Id*. "The justification defense of necessity applies when action is needed 'immediately' (i.e., now) to avoid 'imminent' harm (i.e., harm that is near at hand)." *Henley*, 493 S.W.3d at 89.

As previously noted, the only evidence that Hernandez believed shooting Jesus was immediately necessary to avoid imminent harm was Hernandez's own testimony, and the jury apparently disbelieved him. The other witnesses testified Jesus did not threaten Hernandez with the knife or pursue Hernandez when he returned to his car, so nothing prevented Hernandez from simply driving away. In addition, Jesus testified he dropped the knife when he tripped going inside the house. Although two knives were located at the scene, Jesus testified he was not holding a knife when Hernandez shot him. Accordingly, Hernandez's fourth issue is overruled.

## CONCLUSION

The trial court's judgments are affirmed.

Liza A. Rodriguez, Justice

DO NOT PUBLISH