**Robert Carl MADDEN aka Robert Charles Madden aka Robert Madden, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 63776.**

Court of Criminal Appeals of Texas, En Banc.

May 22, 1985.

Rehearing Denied July 3, 1985.

Second Rehearing Denied July 24, 1985.

Phoebe Lester, (court appointed), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., James C. Brough, & R.P. Cornelius, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION

McCORMICK, Judge.

This is an appeal from a conviction for rape. Punishment was assessed at twenty years.

On August 5, 1978, B.W. and two of her friends went to a club in Houston called The Barbary Coast. At the club, B.W. and her friends met appellant and a man named Gus. B.W.'s friends went to sit at a table while B.W. stayed at the bar with appellant and Gus. When it was time for the club to close, B.W. was unable to find her friends. Appellant told her that he and Gus would give her a ride to her friends' apartment, but she declined. Appellant and Gus then offered to walk her out to the parking lot

so she could find her friends. When they reached the parking lot, they still did not see B.W.'s friends. B.W. told appellant she would go back inside the club to use the restroom and to try and find her friends. At that point, appellant told B.W. that she was not going anywhere. B.W. became frightened and again attempted to go inside the club. Appellant told her that if she really needed to go to the bathroom she could go behind some hedges that skirted the parking lot. B.W. walked over to the hedges with the idea of running away, but appellant followed her. B.W. relieved herself behind the hedges and as she walked back toward the parking lot she saw her friends circling the parking lot in their car. B.W. began waving her hands over her head and yelling, but appellant slapped her arms down. B.W. started running to her friends' car but appellant chased her, grabbed her and pulled her over to his car. By this time Gus was already behind the steering wheel, so appellant opened the front passenger door and pushed B.W. into the car. Appellant climbed in beside her and said, "We're leaving." B.W. began crying. As they drove out of the parking lot, appellant apologized for scaring B.W. and said they would take her to her friends' house. The trio drove to a house and appellant told B.W. he was going to get the keys to his brother's car and they would be on their way again. B.W. went into the house with appellant and he led her into a bedroom. At that moment, B.W. became afraid appellant was going to kill her. B.W. pleaded with appellant to let her call a taxicab. Appellant refused and B.W. began crying again. Appellant then told B.W. that she would never get to her friends' house until she cooperated with him. B.W. took this as a threat on her life. Appellant told B.W. to lay on the bed. B.W. refused and appellant grabbed her and forced her to lay down. Appellant then attempted to kiss B.W. B.W. again began crying and appellant told her in a loud voice to quiet down or he would get rough with her. At one point while appellant was kissing and fondling B.W. and she was crying, appellant said that there were two other people in the house and that if she did not cooperate he would call them in, too. Appellant took his clothes off and began to unfasten B.W.'s pants. He then ordered her to take off her clothes. B.W. refused and told appellant, "Anything you do to me, you're going to have to do, because I'm not going to help you do it." Appellant forcibly pulled B.W.'s pants off, breaking the leather strap on her shoe in the process. He then told her to take her shirt off or he would do it for her. B.W. complied. At that point, B.W. asked if she could leave and use the restroom. Appellant told her to use the trash can so B.W. took the trash can into the closet and went to the bathroom inside the closet. Appellant then made B.W. lay down on the bed. Whenever B.W. cried or resisted in any way, appellant would tell her that she might never see her father again, or that he could keep her there for days and no one would ever find her. At one point, appellant threatened to beat B.W. up if she did not quit crying. Appellant had sexual intercourse with B.W. Afterwards, he fell asleep. Feeling that this would be an opportune time to escape, B.W. got dressed and slipped quietly out of the house. She ran to a nearby house where she called her parents. Her parents in turn called the police.

Appellant argues that the evidence is insufficient to show that B.W. did not consent to the act of sexual intercourse because the appellant used no force or threats to convey to B.W. that she was in danger of serious bodily injury or the loss of her life.

Appellant was indicted as follows:

"... ROBERT CARL MADDEN AKA ROBERT CHARLES MADDEN AKA ROBERT MADDEN, hereinafter styled the Defendant, heretofore on or about August 5, 1978, did then and there unlawfully, intentionally and knowingly by force and threats to [prosecutrix] a female not his wife and hereafter styled Complainant, have sexual intercourse with the Complainant and without the consent of the Complainant."

The pertinent part of V.T.C.A., Penal Code, Section 21.02, in effect at the time of the offense, reads:

"(a) A person commits an offense if he has sexual intercourse with a female not his wife without the female's consent.

"(b) The intercourse is without the female's consent under one or more of the following circumstances:

"(1) he compels her to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances;

"(2) he compels her to submit or participate by any threat, communicated by actions, words, or deeds, that would prevent resistance by a woman of ordinary resolution, under the same or similar circumstances, because of a reasonable fear of harm; ..."

Viewing the evidence in the light most favorable to the verdict, it is clear that B.W. did not consent to the act of sexual intercourse and that she was compelled to submit to appellant's assault by virtue of both threats made and force used against her. This ground of error is overruled.

■ Next, appellant argues that the evidence is insufficient to show that the offense occurred in Harris County. The appellant stated that he lived at 8406 Clairborne and that the alleged offense took place at that address. Officer Baker testified that the 8400 block of Clairborne was in his district or beat and this location was within the city limits of Houston, Harris County, Texas. Article 13.17, V.A.C.C.P., provides that venue need be proved only by the preponderance of the evidence. The evidence is clearly sufficient to show venue. Appellant's second ground of error is overruled.

Although appellant's counsel advances one more ground of error, we need not address it because we have found other reversible error. Appellant has filed several pro se briefs. Although appellant is not entitled to hybrid representation, we have reviewed his contentions in the interest of justice. Appellant argues that the failure

of the trial court to determine the voluntariness of a written statement made by appellant during custodial interrogation violated Article 38.22, V.A.C.C.P. During cross-examination of appellant, the State attempted to impeach appellant by introducing portions of a written statement (State's Exhibit 12) appellant had made to the police. Defense counsel objected and asked that, before the State be allowed to read from the statement, the court should determine whether the statement was given freely and voluntarily. The trial court overruled the objection.

■ The record shows that State's Exhibit 12 was made by appellant on August 5, 1978. Appellant's trial began on January 16, 1979. At the time of both the making of the statement and appellant's trial, Sections 5 and 6 of Article 38.22, V.A.C.C.P., provided:

"Sec. 5. Nothing in this article precludes the admission of a statement made by the accused in open court at his trial, before a grand jury, or at an examining trial in compliance with Articles 16.03 and 16.04 of this code, or of a statement that is the res gestae of the arrest or of the offense, or of a statement that does not stem from custodial interrogation, *or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness,* or of any other statement that may be admissible under law.

"Sec. 6. In *all* cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order

shall be filed among the papers of the cause...." (emphasis added).

Clearly, that portion of Section 5 which concerns a statement which bears upon the credibility of an accused as a witness mandates that that statement be voluntary. Thus, when the appellant requests that a determination of the voluntariness of the statement which the State seeks to use for impeachment purposes be made, it is incumbent upon the trial judge to make such a determination out of the presence of the jury.

We are cognizant of the United States Supreme Court decisions in *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and in *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), wherein the Court held that although a statement made by a defendant was barred in the prosecution's case in chief because of *Miranda* violations, the prosecution could introduce the statement to impeach the defendant's credibility. It is important to note that in both of these cases the Supreme Court stressed that the defendant had made no claim that the statements made to the police were coerced or involuntary. The Court also stressed in both cases that the statements were not barred for impeachment purposes, "provided of course that the trustworthiness of the evidence satisfies legal standards." *Harris v. New York*, supra, 401 U.S. at 224, 91 S.Ct. at 645. Implicit in these opinions is the underlying premise that where such statements are not voluntary they may not be used as impeaching material.

This was pointedly addressed in *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), wherein the Supreme Court wrote the following regarding written statements made by Mincey and used to impeach his testimony at trial:

"Statements made by a defendant in circumstances violating the strictures of *Miranda v. Arizona*, supra, are admissible for impeachment if their 'trustworthiness ... satisfies legal standards.' *Harris v. New York*, supra, 401 U.S. at 224, 91 S.Ct., at 645; *Oregon v. Hass*, supra,

420 U.S. at 722, 95 S.Ct., at 1220. But *any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law, 'even though there is ample evidence aside from the confession to support the conviction.' *Jackson v. Denno*, 378 U.S., supra, at 376, 84 S.Ct., at 1780; *Haynes v. Washington*, 373 U.S. 503, 518, 83 S.Ct. 1336, 1345, 10 L.Ed.2d 513; *Lynumn v. Illinois*, 372 U.S. 528, 537, 83 S.Ct. 917, 922, 9 L.Ed.2d 922; *Stroble v. California*, 343 U.S. 181, 190, 72 S.Ct. 599, 603, 96 L.Ed. 872; see *Chapman v. California*, 386 U.S. 18, 23 and n. 8, 87 S.Ct. 824, 828, 17 L.Ed.2d 705. If therefore, Mincey's statements to Detective Hust were not ' *"the product of a rational intellect and a free will,"* ' *Townsend v. Sain*, 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770, quoting *Blackburn v. Alabama*, 361 U.S. 199, 208, 80 S.Ct. 274, 280, 4 L.Ed.2d 242, his conviction cannot stand...." 437 U.S. at 397, 398, 98 S.Ct. at 2416.

As noted above, the Texas Legislature has seen fit to specifically set out language mandating that before a statement made by the accused can be used for impeachment purposes it must be a voluntary statement. In addition, the Supreme Court of the United States has held it to be a violation of due process to use an involuntary statement made by a defendant for the purpose of impeaching the trial testimony of that defendant. Thus, where the trial judge, as in the instant case, refuses to determine the voluntariness of the statement at the specific request of the defendant, we have no choice but to find reversible error. See: *Hugley v. State*, 505 S.W.2d 914 (Tex.Cr.App.1974); *Whiddon v. State*, 492 S.W.2d 566 (Tex.Cr.App.1973). Because we have found the evidence sufficient and have found only trial error, we now reverse and remand the judgment.