James Arthur **MOLITOR**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 3–89–247–CR.

Court of Appeals of Texas, Austin.

March 18, 1992.

Discretionary Review Granted June 24, 1992.

Eddie G. Shell, Eddie G. Shell & Associates, Paul Decuir, Jr., Burnet (substituted for Eddie G. Shell), for appellant.

Ken Anderson, Dist. Atty., Williamson County, Sally Ray, Asst. Dist. Atty., Georgetown, for appellee.

Before JONES, SMITH and ONION,* JJ.

ONION, Justice (Retired).

A jury convicted appellant, James Arthur Molitor, of murder, Tex.Penal Code Ann. § 19.02 (1989), and assessed his punishment at life imprisonment. Tex.Penal Code Ann. § 12.32 (Supp.1992). Appellant advances ten points of error. He contends there is no evidence that he intentionally or

---

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003(b) (1988).

knowingly killed the deceased as alleged. In other points, appellant claims that the trial court erred in refusing to order disclosure of the content of his oral statements made to a police officer after disclosure had been ordered at a pretrial hearing, erred in allowing irrelevant and prejudicial matters into evidence during the interrogation of the deceased's mother, and erred in refusing *Jackson v. Denno*[1] hearings on two occasions. Additional points center on the court's charge. Appellant argues that the trial court erred in refusing charges to the jury on theories of self defense, defense of property and accident, and on the lesser-included offense of criminally negligent homicide. We will affirm the judgment of conviction.

### Statement of Facts

We shall commence our discussion with appellant's tenth point of error claiming there was no evidence that he intentionally or knowingly killed Kenneth Dale Wylie, the deceased. The facts are essential to this point and will place the other points of error in proper perspective.

On Sunday afternoon, May 28, 1989, the appellant heard rocks hitting the side of his house. He looked out a window and saw two five-year old boys. The children were Matthew Egloff, who lived next door, and Christopher Wylie, who also lived in the neighborhood. Christopher apparently was not known to appellant. Appellant went outside, and when Christopher started to throw another rock despite his admonishment to stop, appellant grabbed the child's arm and apparently slapped Christopher, who started crying. Both boys ran next door to the Egloff home.

Soon thereafter, Mike Egloff and Kenneth Dale Wylie, the two boys' fathers, went to appellant's home. Wylie's wife, carrying her infant daughter, and Christopher followed them. Wylie went to the front door and began knocking. Egloff was about six feet behind Wylie and to the

left. Wylie's wife and the two children were some distance behind the two men.

According to the testimony of Mike Egloff and Wylie's wife, a conversation ensued between Wylie and the appellant after he opened the door. Wylie asked why appellant had struck his son. When appellant related the rock-throwing incident, Wylie advised appellant to come to him, not his son, if the son misbehaved. The witnesses stated that there was then a gun shot, and appellant slammed the door. Neither witness was in a position to see the gun when it fired; they only heard the shot. Both testified that Wylie neither entered appellant's house nor hit appellant in any fashion.

When Deputy Sheriff Mike Locke responded to a call, he found Wylie lying on the ground between two residences. Several people were standing around. When he asked who was involved in the shooting, appellant, standing by his garage door, answered, "I shot him." Appellant later showed Mike Locke the gun inside his house.

The cause of Wylie's death was shown to be a gunshot wound of the abdomen resulting in massive internal bleeding. The medical examiner estimated that the gun had been fired from a distance of six inches to two feet away from Wylie's body. The doctor testified the bullet angle was a "30 degree angle on the horizontal" ... "parallel to the ground," that it was not coming up or going down. The weapon shown to have fired the fatal shot, a double action revolver, has a trigger that when pulled, both cocks and releases the hammer to fire the revolver.

Appellant's version of the facts differs somewhat from the State's version. After the rock-throwing incident with the children, appellant testified that he heard a loud banging at his front door that startled him. When he looked out the peephole in the door appellant saw two individuals whom he did not recognize. He was not well acquainted with his neighbors. The

---

**1.** *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *see also* Tex.Code Crim. Proc. 38.22 § 6 (1979).

loud pounding continued. Frightened, appellant went to a cabinet near the door and obtained the loaded revolver "in case he needed to scare someone off, or [he] could threaten them to get away." Appellant placed his finger in the trigger guard of the gun and concealed the weapon behind his back with his arm straight down, "hoping it wouldn't be necessary to brandish it." He then opened the door.

According to appellant, when he opened the door he was confronted by a man who was red in the face. The man was Wylie, whom appellant had never met. Appellant testified that Wylie "said something to me, turned—and he turned back and said something else and hit me in the side of the head." The next thing appellant remembered was getting up off of the floor and smelling gun powder. He testified, "I swear to God I do not remember doing it [pulling the trigger]." Appellant never testified that the blow to his head caused him to discharge the revolver, or that in falling the gun went off accidently. Appellant could not remember what occurred. He stated that he did not intend to kill Wylie.

### Sufficiency of Evidence

The standard for reviewing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 n. 12, 99 S.Ct. 2781, 2789 n. 12, 61 L.Ed.2d 560 (1979); *Valdez v. State,* 776 S.W.2d 162, 165 (Tex.Crim.App.1989), *cert. denied,* 495 U.S. 963, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990); *Dickey v. State,* 693 S.W.2d 386, 387 (Tex.Crim.App.1984). The standard for review is the same in both direct and circumstantial evidence cases. *Herndon v. State,* 787 S.W.2d 408, 409 (Tex.Crim.App.1990); *Chambers v. State,* 711 S.W.2d 240, 244–45 (Tex.Crim.App. 1986); *cf. Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991) (abolishing the reasonable hypothesis construct in circumstantial evidence cases with the decision to be applied prospectively).

■ Appellant urges that there is no evidence to support the culpable mental states of intentionally or knowingly as alleged in the indictment. Proof of a culpable mental state generally relies on circumstantial evidence. *Gardner v. State,* 736 S.W.2d 179, 182 (Tex.App.1987), *aff'd,* 780 S.W.2d 259 (Tex.Crim.App.1989). Intent may be inferred from the acts, words and conduct of the accused. *Dues v. State,* 634 S.W.2d 304, 305 (Tex.Crim.App.1982). Knowledge can also be inferred from the conduct of and remarks by the accused and from the circumstances surrounding the acts engaged in by the accused. *See Dillon v. State,* 574 S.W.2d 92, 94–95 (Tex.Crim.App. 1978); *Escanbrack v. State,* 646 S.W.2d 480, 481 (Tex.App.1983, no pet.).

■ There is no direct evidence as to appellant's state of mind at the precise time of the shooting; it is clear, however, that he fired the shot that killed the deceased. The intent to commit murder may be inferred from the defendant's use of a deadly weapon per se. *Flanagan v. State,* 675 S.W.2d 734, 744 (Tex.Crim.App.1984); *Foster v. State,* 639 S.W.2d 691, 695 (Tex. Crim.App.1982); *Fentis v. State,* 528 S.W.2d 590, 592 (Tex.Crim.App.1975). The defendant's use of a deadly weapon per se is only a circumstance indicating guilt from which a jury may or may not infer an intent to kill. It is neither conclusive nor burden shifting. *Moreno v. State,* 755 S.W.2d 866, 868–69 n. 3 (Tex.Crim.App. 1988). In an appellate review, evidence of "the use of a deadly weapon per se constitutes more than a 'mere modicum' of evidence of an intent to kill," when viewed in the light most favorable to the jury's verdict. *Id.*

■ Appellant correctly asserts that this inference of intent to kill can be rebutted. *Foster,* 639 S.W.2d at 695. In *Foster,* the inference was rebutted where all the evidence pointed to an accidental shooting, and the court held the evidence was insufficient to prove that the defendant intentionally or knowingly caused the death of the deceased. In the instant case, it is undisputed that the appellant shot the deceased with a double action revolver which was

shown to be a firearm. A firearm is a deadly weapon per se. *Gomez v. State,* 685 S.W.2d 333, 336 (Tex.Crim.App.1985).

■ Unlike *Foster,* all the evidence in the instant case does not point to an accidental shooting. The appellant acknowledged that he retrieved a loaded gun before he opened the door. He asserted that the deceased struck him and that he fell. Appellant did not remember pulling the trigger. He did not testify directly that the shooting was accidental. The shot was fired parallel to the ground, and not at an angle "coming up." Two eyewitnesses testified that the deceased never hit the appellant. While the members of the jury were free to believe appellant's testimony that he did not intend to kill the deceased, they were also free to reject his version of the facts and reasonably infer that appellant intentionally or knowingly killed the deceased. Jurors are the triers of the facts, the judges of the credibility of the witnesses, and of the weight to be given their testimony. Tex.Code Crim.Proc.Ann. art. 38.04 (1979). The jury is entitled to accept or reject all or any part of the testimony by the witnesses for the State and the accused. *Beardsley v. State,* 738 S.W.2d 681, 684 (Tex.Crim.App.1987). Reconciliation of evidentiary conflicts is solely a function of the trier of fact. *Bowden v. State,* 628 S.W.2d 782, 784 (Tex.Crim.App.1982).

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged, including the requisite intent. Point of error number ten is overruled.

### Failure to Disclose Statements

■ In his first point of error appellant contends that the trial court erred in refusing to order the State to disclose to him "the content of a statement made by appellant to an investigating officer although same had previously been ordered." Appellant made certain oral statements to a peace officer at the scene of the alleged offense. He later refused to give a written statement. The oral remarks were included in an offense report prepared by the officer, a work product of the State. At a pretrial hearing before a visiting judge, appellant asked that the report be disclosed to him. The State opposed this discovery request on the basis that the report was not discoverable under the statute. *See* Tex.Code Crim.Proc.Ann. art. 39.14 (1979). Further, the State pointed out that it did not intend to use the oral statements in its case-in-chief but only if the appellant testified, and then only for impeachment purposes. The prosecutor noted that appellant had available another officer's testimony from a "probable cause" hearing reflecting that the appellant had orally admitted at the scene that he had shot the deceased and that the gun in question was his. The visiting judge denied the discovery request, but stated that he would order disclosure at trial in the event that the appellant testified and before "any examination is made by the State." We do not find any written orders on discovery in the record.

After the State rested its case at the trial on the merits, and before the appellant testified, the appellant recalled Deputy Sheriff Wayne Locke, brother of Mike Locke. Appellant's counsel elicited from Locke that appellant had admitted at the scene that the gun was his and that he had shot the deceased. At this point the district attorney approached the bench and warned counsel that his interrogation was going to permit the balance of appellant's conversation with the officers at the scene to become admissible. *See* Tex.R.Crim. Evid.Ann. 107 (Pamph. 1992) (rule of optional completeness). The colloquy turned to the discovery ruling, when appellant again requested the offense report. The "regular" judge of the district court who was presiding at the trial inquired about the discovery ruling. After being informed, the court denied appellant's request.

When the State began its cross-examination of the appellant, there was no further request for the offense report. When the prosecutor inquired of appellant's conversation with Captain Richard Elliott, whose offense report was involved, appellant's

only objection was that the conversation was not admissible until a *Jackson v. Denno* hearing was held. There was no claim that any discovery order was being violated. The complaint on appeal does not comport with the objection made at trial. Nothing is presented for review. *See Rezac v. State,* 782 S.W.2d 869, 870 (Tex. Crim.App.1990). The first point of error is overruled.

### Failure to hold Jackson
### v. Denno Hearings

■ In points of error two and five, appellant contends that the trial court reversibly erred in refusing *Jackson v. Denno* hearings on oral statements he made at the scene of the alleged offense to Captain Elliott in the presence of Deputy Wayne Locke. *See Madden v. State,* 691 S.W.2d 688, 690–91 (Tex.Crim.App.1985). Appellant urges that even if the statements were being used only for impeachment, he was entitled to a hearing on the issue of voluntariness. *See* Tex.Code Crim.Proc.Ann. art. 38.22, § 5 & § 6 (Vernon 1979). He calls our attention to two separate parts of the appellate record where he asked for a *Jackson v. Denno* hearing. What appellant fails to tell us is that he was accorded a *Jackson v. Denno* hearing when Captain Elliott testified for the State in rebuttal. In a separate hearing in the absence of the jury, Elliott related that he gave the appellant the *Miranda* [2] warnings, that appellant initialed each warning and said that he understood the warnings. Thereafter, when asked if he would like to tell the officer what had happened, the appellant replied, "Yes." He told Elliott his story, signed a consent-to-search form, and permitted the officers to examine the left side of his head. It was only later that appellant declined to give a written statement. The evidence as to the voluntariness of the oral statements was not controverted. Appellant made no claim at the hearing, nor does he do so now, that his oral statements were involuntary because of an overbearing of will, coercion or duress. *See Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57

L.Ed.2d 290 (1978). Thus, the record does not indicate that appellant's statements were involuntary under "traditional standards for evaluating voluntariness and trustworthiness." *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *see also Huffman v. State,* 746 S.W.2d 212, 220–21 (Tex.Crim.App.1988).

Having ignored the *Jackson v. Denno* hearing that was held, appellant does not brief the points of error to show that he was harmed by the failure of the court to accord a voluntariness hearing earlier in the trial on the merits. *See* Tex.R.App. P.Ann. 74(f) (Pamph.1992).

Under any circumstances, it does not appear that reversible error is presented by points of error two and five. Even if *Jackson v. Denno* was applicable at the times urged, a new trial is not necessary. A remand for a voluntariness hearing is all that would be called for, but even that is rendered unnecessary by the fact of the subsequent voluntariness hearing at the trial on the merits. *Cf. Davis v. State,* 505 S.W.2d 800, 802 (Tex.Crim.App.1974); *King v. State,* 502 S.W.2d 795, 798 (Tex.Crim. App.1973); *Coursey v. State,* 457 S.W.2d 565, 569 (Tex.Crim.App.1970); *Ex parte Engle,* 418 S.W.2d 671, 675 (Tex.Crim.App. 1967). Points of error two and five are overruled.

### A Claim of Irrelevant and
### Prejudicial Matters

■ In his third point of error, appellant contends that the trial court erred in allowing introduction into evidence of "irrelevant and prejudicial matters." It appears that appellant complains of the admission into evidence of a duly authenticated birth certificate of the deceased and two family photographs.

The indictment alleged, *inter alia,* that the appellant "intentionally and knowingly caused the death of an *individual,* Kenneth Dale Wylie, by shooting him with a deadly weapon, namely, a firearm...." (emphasis added). *See* Tex.Penal Code Ann. § 19.02(a)(1) (1989). The burden of proof beyond a reasonable doubt was on

---

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the State. *See* Tex.Penal Code Ann. § 2.01 (1974); Tex.Code Crim.Proc.Ann. art. 38.03 (Vernon Supp.1992). The State called the deceased's mother, Mary Sue Anderson, as a witness. She identified the birth certificate, a recent photograph of the deceased and his son, and a photograph of the deceased, his wife and two children. When the exhibits were offered into evidence, appellant simply objected that they were "irrelevant and prejudicial." In order to preserve error on appeal, an objection to evidence must be specific and timely made. Tex.R.Crim.Evid.Ann. 103(a)(1) (Pamph. 1992); Tex.R.App.Proc.Ann. 52(a) (Pamph. 1992); *Little v. State*, 758 S.W.2d 551, 563 (Tex.Crim.App.), *cert. denied*, 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988). Normally, a general objection is insufficient to preserve error. *Lewis v. State*, 664 S.W.2d 345, 349 (Tex.Crim.App.1984). The objection made at trial was too broad, general and global to preserve error. *Maynard v. State*, 685 S.W.2d 60, 64 (Tex.Crim.App. 1985); *see also Barnard v. State*, 730 S.W.2d 703, 716 (Tex.Crim.App.1987), *cert. denied*, 485 U.S. 929, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988). Appellant made no Rule 403 objection. Tex.R.Crim.Evid.Ann. 403 (Pamph.1992). In fact, he claimed only in part that the evidence was irrelevant, and did not reasonably apprise the trial court of the ground on which his "prejudice" objection was based. As to the birth certificate, there was no objection based on failure to comply with Rule 902. Tex. R.Crim.Evid.Ann. 902 (Pamph.1992). The third point of error is overruled.

### Bolstering

■■■ Appellant's fourth point of error states that the trial court "erred in permitting the State to admit a prejudicial, bolstering statement of appellant as rebuttal evidence." It appears that appellant has confused bolstering with proper impeachment by rebuttal testimony. "Bolstering" occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party. *Pless v. State*, 576 S.W.2d 83, 84 (Tex.Crim. App.1978); *Frison v. State*, 473 S.W.2d 479, 481 (Tex.Crim.App.1971); *see also Anderson v. State*, 717 S.W.2d 622, 630 (Tex.Crim.App.1986). The testimony complained of by appellant does not fall within this rule. The two peace officers, Wayne Locke and Richard Elliott, were called to rebut appellant's statement that he did not slap the five-year old Christopher Wylie prior to the shooting as well as his equivocal statements about the matter. That the officers repeated some of the facts testified to by appellant is insignificant since they were a necessary predicate to and part of their rebuttal testimony.

On cross-examination, appellant stated that he had grabbed Christopher's arm to knock the rock out of his hand. When asked if he had slapped the child, he responded, "I may have...." When pressed by the prosecutor as to his memory of the occasion, appellant stated "I did not slap him. I may have hit him." Subsequently, when questioned about whether he told Captain Elliott that he had slapped the boy, appellant responded: "I may have said that. I was very upset at that point."

In rebuttal, the State called officers Wayne Locke and Richard Elliott. Over the objections of bolstering, not impeachment, Locke testified that in his presence appellant admitted to Elliott that he had slapped the child, and Elliott testified that in the same conversation appellant remembered the details of what he had done to the little boy. At one point in the trial appellant denied he had slapped the child. When asked if he told Elliott the contrary, appellant's answers were not unequivocal admissions. Thus the State's impeachment was proper. Tex.R.Crim.Evid.Ann. 612 (Pamph.1992); *see also Boyd v. State*, 774 S.W.2d 37, 41 (Tex.App.1989, pet. ref'd). The fourth point is overruled.

### Instruction on Use of Deadly Force in Self-defense

In point of error six, appellant contends that the trial court erred in refusing to charge the jury on the issue of self-defense. Appellant concedes that the issue is whether he was entitled to a jury instruc-

**520**

tion on the right to use deadly force in self-defense.

■ A defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence, regardless of whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion the testimony is not entitled to belief. *Booth v. State,* 679 S.W.2d 498, 500 (Tex.Crim.App.1984). If the defensive theory is raised, and the trial court is timely and properly requested to instruct the jury on that theory, the trial court must instruct the jury on the raised defensive theory. The jury is the trier of fact, and no one else has the responsibility to decide whether to accept or reject a properly raised defensive theory. *Thompson v. State,* 521 S.W.2d 621, 624 (Tex.Crim.App. 1974).

■ Concluding that the defensive theory was properly "requested," we must decide whether the evidence raised the issue so as to require the submission of a charge on deadly force in defense of a person. Self defense being a justification, the burden of producing the evidence (going forward with the evidence) is upon the defense. Once that burden has been satisfied the burden of persuasion beyond a reasonable doubt shifts to the State. *Whiting v. State,* 797 S.W.2d 45, 47 (Tex.Crim.App. 1990); *Luck v. State,* 588 S.W.2d 371, 375 (Tex.Crim.App.1979), *cert. denied,* 446 U.S. 944, 100 S.Ct. 2171, 64 L.Ed.2d 799 (1980).

It has been said that a perusal of the 1974 Penal Code assures one that a defense does not merely negate an element of an offense, but rather requires the accused to admit the commission of the offense and then to justify or excuse his actions so as to absolve him of criminal responsibility for engaging in conduct which otherwise would constitute a crime. *Sanders v. State,* 707 S.W.2d 78, 81 (Tex.Crim.App.1986). *Willis,* however, determined that *Sanders* "spoke too generally in deciding that all defenses

were in the nature of confession and avoidance." *Willis v. State,* 790 S.W.2d 307, 314 (Tex.Crim.App.1990). We need not determine if appellant admitted the commission of the offense charged, *cf. Martinez v. State,* 775 S.W.2d 645, 647 (Tex.Crim.App. 1989), because the disposition of the point of error may be properly based on other grounds.

■ Appellant used deadly force in shooting the deceased with a revolver. Section 9.32 of the Texas Penal Code (Deadly Force in Defense of Person) provides that the use of deadly force is justified in self-defense only when three conditions are present: (1) the defendant would have been justified in using force under § 9.31[3]; (2) a reasonable person in the defendant's situation would not have retreated; and (3) the use of deadly force was reasonably believed to be immediately necessary to protect the defendant against another's use or attempted use of unlawful deadly force, or to prevent the imminent commission of specified violent crimes. Tex.Penal Code Ann. § 9.32 (Supp.1992).

In the absence of evidence of use or attempted use of deadly force by the deceased, the statutory defense permitted by § 9.32 is not available, and a defendant is not entitled to a jury instruction. *Werner v. State,* 711 S.W.2d 639, 644 (Tex.Crim. App.1986); *Ogas v. State,* 655 S.W.2d 322, 324–25 (Tex.App.1983, no pet.); *Jones v. State,* 644 S.W.2d 530, 532 (Tex.App.1982, no pet.); *Bray v. State,* 634 S.W.2d 370, 372–73 (Tex.App.1982, no pet.).

In *Ogas,* it was held that a blow to the face with an open or closed hand does not constitute the use or attempted use of a deadly force justifying the response of deadly force in self-defense. 655 S.W.2d at 324; *see also Murphy v. State,* 700 S.W.2d 747, 751 (Tex.App.1985), *aff'd,* 777 S.W.2d 44 (Tex.Crim.App.1989) (hair pulling did not justify deadly response).

**3.** In pertinent part § 9.31 (Self defense) provides:
　(a) Except as provided in subsection (b) of this section a person is justified in using force against another when and to the degree he

reasonably believes force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. Tex.Penal Code Ann. § 9.31(a) (1974).

■ Appellant did not testify that Wylie, the deceased, or anyone with him was armed or had a weapon in their possession. Appellant did not, and plainly could not, testify that he reasonably believed it necessary to shoot the deceased in order to defend himself against the deceased's use or attempted use of deadly force. Appellant claimed only a blow to his head struck by deceased's hand. Appellant claimed he could not remember pulling the trigger, and could not remember what happened until he got up from the floor. We conclude that the trial court did not err in refusing to give a self-defense charge on the use of deadly force. *Mathews v. State,* 725 S.W.2d 491, 494 (Tex.App.1987), *remanded on other grounds,* 761 S.W.2d 11 (Tex.Crim.App.1988). We need not consider whether a reasonable person in appellant's circumstance would not have retreated.[4] Appellant's sixth point of error is overruled.

*Instruction on Defense of Property*

■ In appellant's eighth point of error, he argues that the trial court erred in refusing to instruct the jury on the right to use deadly force to defend his property. Evidence from any source can raise a defensive issue, which must be included in the court's charge upon proper objection or request, regardless of the weight of the evidence. *Hayes v. State,* 728 S.W.2d 804, 808 (Tex.Crim.App.1987). The record indicates that the appellant used deadly force, to wit: a firearm. Deadly force is defined as a "force that is intended or known by the actor to cause or in the manner of its use is capable of causing, death or serious bodily injury." Tex.Penal Code Ann. § 1.07(a)(11) (1974). Since deadly force was used by the appellant, we must look to Tex.Penal Code Ann. §§ 9.41 and 9.42 (1974).

Texas Penal Code Ann. § 9.41 provides in pertinent part:

(a) a person in lawful possession of land or tangible movable property is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the others' trespass on the land or unlawful interference with the property.

Section 9.42 of the Penal Code provides: A person is justified in using deadly force against another to protect land or other tangible, movable property:

(1) if he would be justified in using force against the other under § 9.41 of this Code; and

(2) when and to the degree he reasonably believes the deadly force is necessary:

(A) to prevent the others' imminent commission of arson, burglary, robbery, aggravated robbery, theft during the nighttime, or criminal mischief during the nighttime; or

(B) to prevent the other who is fleeing immediately after committing burglary, robbery, aggravated robbery, or theft during the nighttime from escaping with the property; and

(3) he reasonably believes that:

(A) the land or property cannot be protected or recovered by any other means; or

(B) the use of force other than deadly force to protect or recover the land or property would expose the actor or another to a substantial risk of death or serious bodily injury.

There was no evidence in the record of imminent arson, burglary, robbery, theft, criminal mischief or the commission of any of these crimes, nor was there evidence that the deceased committed any such offense and was fleeing immediately thereafter. Even if appellant had a fear of potential damage to his property, there was no evidence of an imminent crime or damage to the property. We need not reach the question of whether the appellant may have reasonably believed that his property

---

4. A defendant's duty to retreat arises at the time the use of deadly force becomes necessary. *Fielder v. State,* 683 S.W.2d 565, 592 (Tex.App. 1985), *rev'd on other grounds,* 756 S.W.2d 309 (Tex.Crim.App.1988). The duty to retreat is applicable to the defendant even in his own home. *Valentine v. State,* 587 S.W.2d 399, 402 (Tex. Crim.App.1979).

could not be protected or recovered by any other means under § 9.42(3), *supra*, because there is no evidence that a listed crime was committed or imminent under § 9.42(2), *supra*. *Phoenix v. State*, 640 S.W.2d 306, 307 (Tex.Crim.App.1982). Even if that question is reached, there was no evidence suggesting a reasonable belief on the part of appellant that deadly force was necessary to protect his home or other property. Accordingly, the evidence was insufficient to require a defense instruction of deadly force to protect property. *See Id.; Warren v. State*, 764 S.W.2d 906, 910 (Tex.App.1989, pet. ref'd); *MacDonald v. State*, 761 S.W.2d 56, 61 (Tex.App.1988, pet. ref'd); *Jackson v. State*, 753 S.W.2d 706, 710 (Tex.App.1988, pet. ref'd); *Rogers v. State*, 653 S.W.2d 122, 125 (Tex.App. 1983, pet. ref'd). Appellant's eighth point of error is overruled.

### *Requested Charge on "Accident"*

The seventh point of error advanced by appellant contends that the trial court "erred in refusing to charge the jury on the defensive theory of accident." Appellant calls our attention to that part of the record which reflects:

> Mr. Shell: [Defense Counsel]: And also you're denying the charge on accident, is that correct?
>
> The Court: Yes, sir.

■■■ "Accident" is no longer a defense under the 1974 Penal Code and the trial court did not err when it refused to charge on that issue as such. *See George v. State*, 681 S.W.2d 43, 45 (Tex.Crim.App. 1984); *Williams v. State*, 630 S.W.2d 640, 644 (Tex.Crim.App.1982). An instruction on "voluntariness" now serves the same function as the former instruction on "accident." *Joiner v. State*, 727 S.W.2d 534, 535 (Tex.Crim.App.1987); *Williams*, 630 S.W.2d at 644; *Graf v. State*, 807 S.W.2d 762, 767 (Tex.App.1990, pet. ref'd); *see* Tex.Penal Code Ann. § 6.01(a) (Supp.1992) ("A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession.") A jury should now be instructed to acquit if the evidence raises a reasonable doubt that the defendant voluntarily engaged in the conduct, upon proper and timely objection or request. *See George*, 681 S.W.2d at 45.

■■■ In the body of argument under this point of error, appellant contends he dictated into the record a special requested charge on "accident." The same is not set forth in his brief. *See* Tex.R.App.P. 74(f) (Pamph.1992). An examination of this requested instruction indicates that appellant sought a charge on "voluntariness." It would have instructed the jury to acquit if it found from the evidence or had a reasonable doubt that the shooting was a result of an accidental discharge of a gun while Wylie and the appellant were struggling or scuffling for the possession of the gun or just "struggling" and that the shooting was not the voluntary act or conduct of the Defendant.

There was no evidentiary support for the fact that Wylie and appellant were struggling for the possession of the revolver or were otherwise struggling, causing the accidental discharge of the gun. Appellant did not himself claim accidental discharge, but testified in effect that he did not know how the gun discharged. Where the evidence does not raise the issue of involuntary conduct, the trial court is not required to include the instruction in its charge to the jury. *George*, 681 S.W.2d at 47; *Williams*, 630 S.W.2d at 644; *Ross v. State*, 763 S.W.2d 897, 900 (Tex.App.1988, pet. ref'd); *Gaona v. State*, 733 S.W.2d 611, 617 (Tex.App.1987, pet. ref'd); *Pimentel v. State*, 710 S.W.2d 764, 773 (Tex.App. 1986, no pet.).

In *Ross*, the court wrote:

> The Court [in *George* ] acknowledged the fact that a person could commit an offense only if he voluntarily engaged in conduct. *See George*, 681 S.W.2d at 45; *see also Joiner*, 727 S.W.2d at 535; *Gaona*, 733 S.W.2d at 615. However, the Court went on to define just what "voluntarily engaging in conduct" meant. *See George*, 681 S.W.2d at 45. Under the Court's definition, "conduct" could include one or more separate acts, so for *"voluntary conduct"* to occur, the Court held that a person only had to

engage in a single voluntary act and its required mental state. *See Id.* Therefore, conduct is not rendered involuntary simply because it may also include an involuntary act or because the accused did not intend the result of his conduct. *See Joiner,* 727 S.W.2d at 536–37; *George,* 681 S.W.2d at 45; *Gaona,* 733 S.W.2d at 616.

In the final analysis, a trial court is not required to charge on involuntary conduct if the defendant engaged in a single voluntary act and its required mental state—even though an involuntary act may also constitute part of the overall conduct. *See Joiner,* 727 S.W.2d at 536–37; *George,* 681 S.W.2d at 47; *Gaona,* 733 S.W.2d at 617. That is just the situation before us here.

*Ross,* 763 S.W.2d at 900.

■ Up to the time the revolver discharged, appellant engaged in voluntary conduct with the required culpable mental state of intentionally or knowingly. The mere fact that he did not intend for the gun to discharge did not render the conduct involuntary so as to require an involuntary conduct charge. *Ross,* 763 S.W.2d at 901. Moreover, evidence generally raises a defense only if the defendant *admits* the act charged and the defense will absolve him from criminal responsibility for engaging in the conduct. Accordingly, for this additional reason the trial court did not err in refusing requested instructions on "accident" or "voluntariness" because it was not raised by the evidence. *Graf,* 807 S.W.2d at 768. Appellant's seventh point of error is overruled.

### Charge on Criminally Negligent Homicide

■ In his ninth point of error, appellant argues that the trial court erred by refusing to charge the jury on the offense of criminally negligent homicide, a lesser included offense. At the outset, we are confronted with the State's claim that appellant did not preserve this complaint for appellate review. If appellant's "request" for an instruction on criminally negligent homicide consisted only of the portion set out in the State's brief, the State's position would be correct. There were two other "requests" for the instruction desired, the latter one being based on "the evidence." While these "requests" are no models to be emulated, we conclude they were sufficient, under the record in this case, to call the trial court's attention to the claimed omission in the proposed charge. Tex.Code Crim.Proc.Ann. art. 36.15 (Supp.1992); *Stone v. State,* 703 S.W.2d 652, 655 (Tex. Crim.App.1986); *Stiles v. State,* 520 S.W.2d 894, 896–97 (Tex.Crim.App.1975).

■ There is a two-pronged test for determining whether a jury must be charged on a lesser included offense. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Second, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Kinnamon v. State,* 791 S.W.2d 84, 96 (Tex.Crim.App.1990); *Creel v. State,* 754 S.W.2d 205, 210 (Tex. Crim.App.1988); *Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Crim.App.1985); *Royster v. State,* 622 S.W.2d 442, 447 (Tex. Crim.App.1981). In reviewing the facts to make the determination, all of the evidence presented by the State and the defendant must be considered. *Dowden v. State,* 758 S.W.2d 264, 269 (Tex.Crim.App.1988); *Lugo v. State,* 667 S.W.2d 144, 147 (Tex. Crim.App.1984). Entitlement to a jury instruction on a lesser included offense must be made on a case-by-case basis according to the particular facts. *Livingston v. State,* 739 S.W.2d 311, 336 (Tex.Crim.App. 1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *Broussard v. State,* 642 S.W.2d 171, 173 (Tex.Crim.App. 1982).

■ Since criminally negligent homicide is a lesser included offense of murder, the first prong of the so-called *Royster* test is satisfied. *See Thomas v. State,* 699 S.W.2d 845, 847 (Tex.Crim.App.1985); Tex. Code Crim.Proc.Ann. art. 37.09 (1981); *see also* Tex.Penal Code Ann. §§ 19.02(a)(1) and 19.07(a) (1989). This alone is not enough. We must turn to the second prong of the test and determine whether

there is some evidence in the record that appellant, if guilty, is guilty only of criminally negligent homicide. In doing so, we must consider all the evidence produced by either party. *Dowden,* 758 S.W.2d at 269. Whenever evidence from any source raises an issue that a lesser included offense may have been committed and a jury charge on the issue is properly requested, the issue must be submitted to the jury. *Moore v. State,* 574 S.W.2d 122, 124 (Tex.Crim.App. 1978). A defendant's own testimony is sufficient to raise the issue of a lesser included offense. *Hunter v. State,* 647 S.W.2d 657, 658 (Tex.Crim.App.1983). Further, "[t]he credibility of evidence and whether it is controverted or conflicts with other evidence in the case may not be considered...." *Id.* This is true whether the evidence be strong, weak, unimpeached, or contradicted. *Thompson v. State,* 521 S.W.2d 621, 624 (Tex.Crim.App.1974). In a jury trial where the issue is raised it is the duty of the jury, not the trial court, "to determine whether the evidence is credible and supports the ... lesser included offense." *Moore,* 574 S.W.2d at 124; *see also Kinnamon,* 791 S.W.2d at 96.

 "A person commits an offense if he causes the death of an individual by criminal negligence." Tex.Penal Code Ann. § 19.07(a) (1989). Section 6.03(d) of the Texas Penal Code defines criminally negligent conduct:

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he *ought to be aware of a substantial and unjustifiable risk* that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a *gross deviation from the standard of care that an ordinary person would exercise* under all the circumstances as viewed from the actor's standpoint.

Tex.Penal Code Ann. § 6.03(d) (1974) (emphasis added).

A person commits involuntary manslaughter if he recklessly causes the death of an individual. Tex.Penal Code Ann. §§ 19.05(a)(1), 6.03(c) (1974) (defining "recklessly"). As noted above, a person commits criminally negligent homicide if he causes the death of an individual by criminal negligence. The difference between the two culpable mental states required to establish the offenses of involuntary manslaughter and criminally negligent homicide, respectively, lies in whether or not the accused himself perceives the risk of harm which his conduct creates. *Moore,* 574 S.W.2d at 123. Thus, the essence of criminal negligence, and the factor that distinguishes it from involuntary manslaughter, is the failure of the accused to perceive the risk created by his conduct, which he should have perceived. *Mendieta v. State,* 706 S.W.2d 651, 652 (Tex.Crim.App.1986); *Lewis v. State,* 529 S.W.2d 550, 553 (Tex. Crim.App.1975). Before a charge on criminally negligent homicide is required, the record must contain evidence showing an unawareness of the risk. *Mendieta,* 706 S.W.2d at 653.

In *Thomas v. State,* 699 S.W.2d 845 (Tex. Crim.App.1985), the evidence was insufficient to entitle the defense to a charge on the lesser included offense of criminally negligent homicide. The court pointed out that evidence raising the issue of whether a defendant was aware of the risk must be presented before a charge is warranted.

> Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for injury, and that he points a gun at another, indicates a person who is aware of a risk created by that conduct and disregards the risk. *Cf. Simpkins v. State,* 590 S.W.2d 129 (Tex.Cr.App.1979). That he does not anticipate a third person bumping him, causing the weapon to discharge, is a consideration that must be examined with the other evidence to determine awareness of the risk involved in pointing a loaded gun at another. However, in such a case, the awareness of the risk is not necessarily altered. It is not necessarily *inattentive* risk creation. *Lewis, supra.* Rather, the risk is realized and actual harm results. Just because

part of the conduct may be "involuntary" does not relieve a defendant of responsibility and culpability for the entire action. [footnote omitted]. Similarly, a defendant may be aware of a risk and disregard it. The resulting harm may not have been intended, but the defendant is nonetheless responsible to some degree because he disregarded a risk. *Thomas,* 699 S.W.2d at 850 (emphasis in original).

In *Thomas,* the Court of Criminal Appeals criticized past cases decided by that court which had held that the evidence raised criminally negligent homicide, but neglected to detail the evidence showing that the defendant ought to have, but did not, perceive a substantial and unjustifiable risk in his conduct. The *Thomas* court pointed out that a charge on criminally negligent homicide is not required in every case where (1) someone points a loaded gun at another or (2) there is an allegation of accidental discharge of the gun. *Thomas,* 699 S.W.2d at 850. The attendant circumstances from which the defendant's mental state can be inferred must be collectively examined in light of the definition of criminal negligent conduct. *Thomas,* 699 S.W.2d at 850; *see* Tex.Penal Code Ann. § 6.03(d) (1974).

Pertinent to a determination of whether the evidence shows an awareness of the risk that the result will occur are attendant circumstances such as a defendant's familiarity with the gun and its potential for injury; a defendant's conduct in handling the gun; how the weapon could be fired; and how the weapon was actually fired. *Still v. State,* 709 S.W.2d 658, 661 (Tex. Crim.App.1986); *see also Miranda v. State,* 739 S.W.2d 473, 475 (Tex.App.1987, no pet.).

In the instant case, appellant testified that he owned a rifle and a .410 caliber shotgun when he was a youth. He had also fired the revolver in question when he was "a kid." His father had given him the revolver in 1982, but he had not fired it since that time. Appellant admitted that he had cleaned, oiled and loaded the revolver and had placed it in the cabinet near the front door. The evidence shows appellant's familiarity with firearms, including the revolver in question, and their potential for injury. Appellant testified he took the loaded revolver from the cabinet during the pounding at the door in case he needed to "scare someone off" or "threaten them to get away." He related that he hoped that he would not have to "brandish it." Appellant placed the loaded revolver behind his back with his finger in the trigger guard, and then opened the front door. Appellant stated that the deceased said something, stepped inside his house, and struck him in the head; that the next thing he remembered was getting up off the floor and smelling gunpowder; that he did not remember pulling the trigger and did not know how the gun was fired; and that he did not intentionally intend to kill the deceased. Appellant did not directly testify the blow to his head caused him to fire the gun, or that the revolver accidently discharged. He simply could not recall how the revolver discharged.

In determining whether this evidence could give rise to a reasonable inference that appellant was unaware of the risk of death that his conduct created, we observe that just because part of appellant's conduct may have been involuntary does not necessarily relieve him of responsibility and culpability for the entire conduct. *See Thomas,* 699 S.W.2d at 850.[5] Any involuntary conduct is a consideration, however, that must be examined with the other attendant circumstances to determine awareness of the risk of the resulting death. *Id.*

Here, the appellant voluntarily obtained a revolver which he knew was loaded. He was familiar with guns and their potential for injury. Appellant voluntarily placed the gun behind his back and placed his finger inside the trigger guard. He then opened the door. Appellant claimed he did not pull the revolver from behind his back,

---

5. *Cf. George v. State,* 681 S.W.2d 43 (Tex.Crim. App.1984), wherein the court held that where a defendant's handling of a gun is voluntary, the fact that his thumb may have slipped off of the hammer "involuntarily" does not render the action involuntary.

but was struck by the deceased. Appellant did not recall pointing the revolver at the deceased or pulling the trigger. In considering how the weapon could have been fired and was actually fired, *Still*, 709 S.W.2d at 661, we note that it was a double action revolver. When the trigger is pulled, it both cocks and releases the hammer to fire it. The bullet was fired at close range from six inches to two feet, leaving light gunpowder striping and tattooing over a five inch area on the body. The six-foot, five-inch tall Wylie was wounded in the abdomen over the left rib margin twenty-seven inches from the top of the head and four inches to the left of his midline. The record reflects the following examination of the medical examiner:

Q: What degree angle from the midline was the entrance wound?

A: The entrance wound came from the left toward the right but toward his back at a 30 degree angle and on the horizontal.

Q: So, it wasn't coming up?

A: No, it wasn't.

Q: It was going down? It was parallel to the ground?

A: That's correct.

The medical examiner testified that the angle of the trajectory indicated that the weapon was fired "straight on." The physical evidence suggests the loaded revolver must have been pointed at the deceased. When all the attendant circumstances are considered, they indicate a person who was aware of the risk created by the conduct and who disregarded the risk. *See Thomas*, 699 S.W.2d at 850. Testimony regarding his lack of intent to shoot or kill, and the claim of accident or blackout do not call for a different conclusion.

We conclude that the evidence does not show a defendant who failed to perceive a substantial and unjustifiable risk in his conduct of which he should have been aware. Nor does the evidence raise the issue that if guilty, appellant was guilty only of the lesser included offense of criminally negligent homicide. The trial court did not err in refusing the requested charge. *See Mendieta*, 706 S.W.2d at 651; *Thomas*, 699

S.W.2d at 845; *see also Still*, 709 S.W.2d at 658; *Kuykendall v. State*, 609 S.W.2d 791 (Tex.Crim.App.1980); *Simpkins v. State*, 590 S.W.2d 129 (Tex.Crim.App.1979); and *Jackson v. State*, 548 S.W.2d 685 (Tex. Crim.App.1977). Appellant's ninth point of error is overruled.

The judgment is affirmed.

JONES, Justice, dissenting.

I believe the trial court was obligated to submit the requested charge on criminally negligent homicide. Accordingly, I respectfully dissent from the affirmance of the conviction.

As stated by the majority, in deciding whether the second prong of the lesser-included-offense test has been satisfied, this Court must determine if there is "some evidence" in the record that appellant, if guilty, is guilty only of criminally negligent homicide. All of the evidence at the trial must be considered, whether produced by the State or appellant. *Dowden v. State*, 758 S.W.2d 264, 269 (Tex.Crim.App.1988). When evidence from any source, including the defendant's own testimony, raises an issue that a lesser included offense may have been committed, and a jury charge on the issue is properly requested, the issue must be submitted to the jury. *Hunter v. State*, 647 S.W.2d 657, 658 (Tex.Crim.App. 1983); *Moore v. State*, 574 S.W.2d 122, 124 (Tex.Crim.App.1978). This is true whether the evidence favoring the lesser offense be strong or weak, unimpeached or contradicted. *Thompson v. State*, 521 S.W.2d 621, 624 (Tex.Crim.App.1974); *see also Gibbs v. State*, 819 S.W.2d 821, 831 (Tex.Crim.App. 1991). Accordingly, for purposes of determining if a charge on criminally negligent homicide should have been given in the present case, we must, in effect, take appellant's testimony and all other evidence favorable to him as true.

The test for determining if a lesser-included-offense charge should be given is, therefore, roughly the *opposite* of the familiar sufficiency-of-the-evidence test: viewing the evidence in the light most favorable to the *accused*, could any rational trier of fact find beyond a reasonable doubt

that the defendant is guilty only of the lesser offense? To require a stricter showing by the defendant would violate the time-honored rule that a defendant has the right to have the jury and not the trial court decide the credibility of witnesses. *See Lugo v. State,* 667 S.W.2d 144 (Tex. Crim.App.1984), and the cases cited therein.

Moreover, we must keep in mind that a defendant's culpable mental state is usually determined from inferences. *See, e.g., Dillon v. State,* 574 S.W.2d 92, 94–95 (Tex. Crim.App.1978). Thus, just as we must take the appellant's testimony as true for purposes of deciding this issue, we must also give him the benefit of any reasonable inferences that can be drawn from his testimony and other evidence favorable to him.

As stated by the majority, the essence of criminal negligence, and the factor that distinguishes it from involuntary manslaughter, is the failure of the actor to perceive the risk created by his conduct.[1] *Mendieta v. State,* 706 S.W.2d 651, 652 (Tex.Crim.App.1986); *Lewis v. State,* 529 S.W.2d 550, 553 (Tex.Crim.App.1975). Implicit in the statutory definitions of these offenses is the idea that the actor must not have intended the resulting death, nor been aware that a death was reasonably certain to occur. Otherwise, the accused would have acted "intentionally" or "knowingly," not "recklessly" or with "criminal negligence." *See* Tex.Penal Code Ann. § 6.03(a), (b) (1974). Therefore, in order for appellant to be entitled to a jury charge on involuntary manslaughter *or* criminally negligent homicide, the record must first contain "some evidence" that the accused did not intend the resulting death or know that it was reasonably certain to occur. If such evidence is present, the record must then be examined to see if it indicates whether the accused was *aware* or *unaware* of the risk that his conduct could result in the unintentional killing of the deceased.

In the present case, the record contains clear and direct evidence that appellant nei-ther intended to kill the deceased nor was aware that death was reasonably certain to occur. In this regard, appellant testified as follows:

Q: You pulled the gun out and shot Dale the deceased, and that was an intentional act, wasn't it?

A: No, sir. I did not pull the gun out.

Q: What did you do?

A: Mr. Wiley hit me, and I fell back. And I do not know where—at what point the gun went off. I do not remember squeezing the trigger. I remember picking myself up off the floor.

Q: Whether you remembered or not, you had to intentionally pull that trigger. It didn't go off by itself?

A: No, sir. There was no intentionality involved in pulling that trigger.

Q: You don't know. You just don't remember. Isn't that what your testimony is?

A: Yes, sir. I do not remember firing the gun.

Q: So, you don't know whether you did it intentionally or not?

A: I know I did not do it intentionally. I certainly did not intend to hurt anyone.

Where, as in the present case, the record contains evidence that the accused did not act intentionally or knowingly when he killed the deceased, there would seem to be little doubt that the trial court should, if requested, submit a jury charge on: (1) involuntary manslaughter, or (2) criminally negligent homicide, or (3) both. An act that unintentionally causes the death of another is, almost by definition, an act that creates a *risk* of death. Merely because there is some evidence that appellant did not intend the resulting death and was not aware that it was reasonably certain to occur does not, of course, determine whether he *perceived the risk* that an unintended death might occur. *See Still v. State,* 709

---

1. If the actor *is* aware of the risk of unintentionally causing the death of an individual, but nonetheless pursues the course of action and a death results, he is guilty of involuntary man-slaughter. *See* Tex.Penal Code Ann. § 19.-05(a)(1) (1989) & § 6.03(c) (1974). Appellant did not request a charge on involuntary manslaughter in the present case.

S.W.2d 658, 661 (Tex.Crim.App.1986). If a reasonable inference may be drawn from the evidence that the defendant was aware of that risk, a charge on involuntary manslaughter should be submitted. If a reasonable inference may be drawn that he was *not* aware of that risk, a charge on criminally negligent homicide should be submitted. In many cases, *both* inferences may reasonably be drawn from the evidence. *See, e.g., Moore,* 574 S.W.2d at 124. In those cases, both charges should be submitted.

Accordingly, in a case where there is some evidence that the accused did not act intentionally or knowingly when he killed the deceased, a charge on criminally negligent homicide may be refused by the trial court only if the evidence establishes *conclusively* that the defendant was aware of the risk of unintentional death, i.e., only where, after viewing the evidence in the light most favorable to the accused, no rational trier of fact could find that the defendant was unaware of the risk of unintended death. Because the trial court will necessarily rely on inferences, the question whether such a *conclusive* showing has been made should be approached cautiously, with due regard for the principle that it is the jury's prerogative to decide the credibility of witnesses.

Before *Thomas v. State,* 699 S.W.2d 845 (Tex.Crim.App.1985), the Court of Criminal Appeals had held, on numerous occasions, that the lesser offense of criminally negligent homicide was raised if the record contained some evidence that: (1) the defendant pointed a loaded gun at another, and (2) the gun discharged accidentally. *See Shoelman v. State,* 644 S.W.2d 727 (Tex.Crim.App.1983); *Giles v. State,* 617 S.W.2d 690, 691 (Tex.Crim.App.1981); *London v. State,* 547 S.W.2d 27 (Tex.Crim.App.1977); *Dockery v. State,* 542 S.W.2d 644 (Tex.Crim.App.1976).

In *Thomas,* however, the court changed direction. First, the court held that *all* the attendant circumstances "from which the defendant's mental state can be inferred must be collectively examined." 699 S.W.2d at 850. Significantly, the court

went on to hold that a *presumption* of awareness of the risk of death is effectively created by a combination of three factors: (1) the defendant knows a gun is loaded, (2) he is familiar with guns and their potential for injury, and (3) he points the gun at another person. 699 S.W.2d at 850. The court stated that although other factors should be considered, they would not necessarily alter the defendant's awareness of the risk. Thus, in such circumstances, even if there is evidence that the gun discharged accidentally, the defendant would not be entitled to a charge on criminally negligent homicide.

I agree with *Thomas.* The court's holding was in the nature of a policy decision, based in part on common sense: anyone who (1) knows the nature of guns, (2) knows a gun is loaded, and (3) points the gun at another person *cannot help but be aware* of the risk that the gun could discharge accidentally and inflict death. The crucial conduct on which the *Thomas* "presumption" is based, however, is the pointing of a gun at another person: "It seems more likely that a defendant who is familiar with guns, who knows a gun is loaded, and who points it at another person, is consciously disregarding a risk that his conduct—pointing a loaded weapon at another—may cause harm or death and is at least reckless." *Thomas,* 699 S.W.2d at 850.

Logically, all three of the elements creating the *Thomas* presumption must be present before we can confidently say that the evidence conclusively demonstrates awareness of the risk of death. In one case in which the defendant pointed a gun at the victim, but testified that she thought the gun was unloaded, the court held that a charge on criminally negligent homicide was required. *See Richardson v. State,* 816 S.W.2d 849 (Tex.App.1991, no pet.); *but see* Tex.Penal Code Ann. § 22.05(b) (1989).

The majority holds, in effect, that evidence of an accidental or unintentional *pointing,* in combination with evidence of accidental discharge, does not raise criminally negligent homicide. The Court of

Criminal Appeals, however, recently stated just the opposite: that such evidence raises criminally negligent homicide but does *not* raise involuntary manslaughter. In *Montoya v. State*, 744 S.W.2d 15 (Tex.Crim. App.1987), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988), the defendant testified that a police officer was chasing him, that he was attempting to throw away the gun he had, and that when the officer grabbed his arm the gun accidentally discharged, killing the officer. The trial court charged the jury on criminally negligent homicide, but not on involuntary manslaughter. The issue on appeal was whether the trial court should have charged the jury on involuntary manslaughter. After reciting the distinction between criminal negligence and reckless conduct, the court held:

> *Appellant's testimony at trial raised the issue of criminal negligence.* He was aware that the gun was loaded, and that he was being pursued by a police officer. During that chase, he attempted to throw that gun away. He did not, according to him, intend to threaten or harm the police officer.
>
> However, the evidence at trial did not explicitly or implicitly establish that the appellant knew there was a risk to the police officer, and then consciously disregarded that risk. His testimony at trial did not show that the gun was cocked or that he pointed the gun at the officer or in the officer's general direction. The evidence did not show that he threw the gun at the officer. This is not a case like *Simpkins v. State*, 590 S.W.2d 129 (Tex. Cr.App.1979), where the defendant pointed a loaded gun at his victim and consciously disregarded the risk to the victim. This is a case where there was no evidence that the gun was used, or exhibited, in a threatening manner against the police officer. *The evidence at trial did not raise the issue of reckless conduct....*

744 S.W.2d at 29 (emphasis added). Thus, in *Montoya*, even though the defendant knew the gun was loaded and was obviously familiar with guns, the court held that because he denied intentionally shooting or even pointing the gun at the officer, the evidence *did not even raise the issue of recklessness.* In other words, since the evidence showed that the defendant did not intend to point the gun at the victim or exhibit it in a threatening manner, there was *no evidence* that the defendant was aware of the risk of unintended death.

In the present case, as in *Montoya,* the third—and arguably most important—of the three essential "elements" enumerated in *Thomas* is missing: the record contains evidence from which a reasonable inference can be drawn that appellant never intentionally pointed the gun at the deceased. Appellant's testimony in this regard is quite clear: he was hiding the gun behind his back, pointed at the floor, when the deceased struck him in the head. The next thing he remembers is picking himself up off the floor and smelling gunpowder. Whether appellant's story is credible or not is immaterial; as in *Montoya,* his testimony raises a reasonable inference that the gun discharged in the direction of the deceased only as a result of the blow to appellant's head, not as a result of appellant's own volition.

The majority's holding that this evidence does not raise the issue of criminally negligent homicide not only goes far beyond *Thomas,* it seems to be in direct conflict with cases such as *Montoya.*

I would reverse the judgment of conviction and remand the cause for a new trial.